UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HLL BARENTS SCHIFFAHRTSGESELLSCHAFT mBH & CO. KG | CIVIL ACTION |
| VERSUS | NO.  10-2059, c/w 10-4516 |
| STOLTHAVEN NEW ORLEANS, L.L.C., ET AL. | SECTION "N" (3) |

**ORDER AND REASONS**

Before the Court are the following two motions: (1) Defendant Kolmar Americas, Inc.'s Motion to Dismiss (Rec. Doc. 9); and (2) Defendant Stolthaven New Orleans, L.L.C.'s Motion to Dismiss (Rec. Doc. 16). These motions are opposed.  (See Rec. Docs. 34).  As an initial matter, the Court notes that all parties agree that the ripeness issue (alleged in both of the motions) is now moot; thus, ripeness will not be addressed herein, and both motions are denied as moot in that regard.  After considering the memoranda of the parties and the applicable law, the Court rules as set forth herein.

I.    **BACKGROUND**

This lawsuit arose out of a carriage of styrene monomer shipped by Defendant Kolmar Americas, Inc. ("Kolmar Americas") from Braithwaite, Louisiana to Antwerp, Belgium aboard a vessel owned by Plaintiff HLL Barents Schiffahrtsgesellschaft mBH & Co. KG ("HLL Barents"), the M/V MCT ALTAIR.

The M/V MCT ALTAIR arrived at the facility of Defendant Stolthaven New Orleans, L.L.C. ("Stolthaven")[1] on July 24, 2009 to load the shipment of styrene monomer. However, after 110 metric tons of cargo had been loaded, operations were suspended at the request of the vessel's master due to a dispute over the quality of the styrene monomer. After testing of the cargo was performed and approved for continued loading by two surveyors, one on behalf of Shell Chemicals and the other on behalf of American Styrenics, LLC, Kolmar Americas ordered the loading to resume.

When the vessel arrived in Antwerp, Belgium on August 19, 2009, Kolmar Group AG ("Kolmar Group"), the cargo receivers, claimed that the styrene monomer was contaminated with benzene.  Kolmar Group declined the cargo, and HLL Barents was required to place security in favor of Kolmar Group in the amount of $4.2 million in order to avoid the arrest and detention of the M/V MCT ALTAIR.  Kolmar Group and its underwriters filed suit on December 13, 2010 against HLL Barents to recover damages for the same allegedly contaminated cargo. (See consolidated member case no. 10-4516).

The instant suit is brought under this Court's admiralty and maritime jurisdiction.  In it, HLL Barents argues that Kolmar Americas had a legal and contractual duty to it and to the M/V ALTAIR, pursuant to the bill(s) of lading, to provide cargo which is fit and seaworthy.  (Rec. Doc. 1, ¶ XIII).  HLL Barents also claims that Kolmar Americas was "negligent and failed to exercise due care and breached its contractual obligations to HLL Barents by providing either off-spec or contaminated cargo to be loaded on the MCT ALTAIR." (Rec. Doc. 1, ¶ XIV).  HLL Barents asserts that, should it be found liable to Kolmar Group "by way of a judgment,

---

[1]      Stolthaven was not in privity of contract with either Kolmar Americas or HLL Barents, and was not a party to the bill of lading.

arbitration award or settlement," then it should be able to recover from Kolmar Americas by way of "contribution and/or indemnity" for any sums that HLL Barents is required to pay Kolmar Group. (Rec. Doc. 1, ¶XVIII).  HLL Barents has asserts similar negligence claims against Stolthaven: specifically, that it was negligent and failed to exercise due care in its duties as a terminal operator.  (Rec. Doc. 1, ¶XV).

In its Motion to Dismiss, Kolmar Americas argues that HLL Barents has not and cannot state a valid claim for indemnity or contribution. Specifically, Kolmar Americas contends that because HLL Barents has not identified any express written agreement upon which its indemnity/contribution claim is based, HLL Barents must resort to federal maritime law to support its claim, and since the United States Fifth Circuit's holding in *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833-34 (5th Cir. 1992), a common law claim for indemnification and/or contribution is not viable under maritime law.  Stolthaven adopts Kolmar America's Motion to Dismiss for the same reasons set forth therein.

## II.    ARGUMENTS OF THE PARTIES

These two motions essentially make the same arguments; thus, the Court addresses them together.  In the consolidated member case, Kolmar Group and its underwriters seek to recover against HLL Barents for the alleged cargo damage, and HLL Barents is asserting a claim in this case against Kolmar Americas and Stolthaven arising out of the same alleged cargo damage.  In other words, HLL Barents has asserted a claim for indemnity and contribution against alleged joint tortfeasors.

The Verified Complaint does not identify any written indemnity agreement between HLL Barents and Kolmar Americas or between HLL Barents and Stolthaven, which would require

Kolmar Americas or Stolthaven to indemnify HLL Barents. The only contract specifically identified in the Verified Complaint is the bill of lading.  (Rec. Doc. 1, ¶ X). The bill of lading, however, does not identify HLL Barents or contain a contractual indemnification or contribution clause.[2] (Exhibit A to Rec. Doc. 9[3]).  Thus, Kolmar Americas and Stolthaven argue that HLL Barents' claim for indemnification against them must rest on common law.

The availability of common law indemnity and/or contribution under maritime law is considerably limited. *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 501 (5th Cir. 1982)(recognizing that comparative fault displaced the traditional concept of tort immunity and

---

[2]      While HLL Barents admits that the bill of lading does not identify it, HLL Barents asserts that the bill of lading at issue is signed "on behalf of the master."  "Generally, when a bill of lading is signed by the charterer or its agent 'for the master' with the authority of the shipowner, this binds the shipowner and places the shipowner within the provisions of COGSA" *Pacific Employers Ins. Co. v. M/V Gloria*, 767 F.2d 229, 237 (5th Cir. 1985) (quoting *EAC Timberlane v. Pisces, Ltd.*, 745 F.2d 715 (1st Cir. 1984)). Thus, HLL Barents asserts that it was this bill of lading which was breached by Kolmar Americas when Kolmar Americas failed to provide a cargo of Styrene Monomer as described on the bill of lading , that was not contaminated with benzene for carriage on board the M/V MCT ALTAIR from Braithwaite, Louisiana to Antwerp, Belgium.

In reply, Kolmar Americas argues that HLL Barents has neither alleged nor proven any rights under the bill of lading. Kolmar Americas admits that under the ratification doctrine, the vessel may be liable, in rem, for cargo damage (See *Cactus Pipe & Supply Co.*, 756 F.2d at 1113); however, Kolmar Americas asserts that it does not necessarily follow that the vessel owner may have contractual rights or obligations under the bill of lading. Kolmar Americas points to *The Rice Company (Suisse), S.A. v. Precious Flowers Limited,* IBN, 523 F.3d 582 (5th Cir. 2008) to support this argument.  In the *Precious Flowers* case, a vessel owner was not bound by an arbitration provision in a voyage charter via a bill of lading issued by the voyage charterer.  Further, Kolmar Americas notes that even *if* HLL Barents has sufficiently alleged that it was in privity of contract with Kolmar Americas by way of the bill of lading, any alleged breach of that contract would not require Kolmar Americas to indemnify HLL Barents as it is undisputed that the bill of lading does not contain any provision which might be construed as an indemnity provision. Contractual indemnity only lies where the indemnity provision is express and unequivocal. See *Hardy*, 949 F.2d at 834. Thus, Kolmar Americas asserts that because the bill of lading does not contain any indemnification provision, whether HLL Barents has rights under it is irrelevant.

[3]      In resolving a Rule 12(b)(6) motion, the court is generally limited to considering only those allegations appearing on the face of the Complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the Complaint may be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990). Further, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir.2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000)).  Thus, this Court can consider the attached bill of lading, without converting the instant motion to a motion for summary judgment.

thereby vitiated virtually all forms of common law claims for indemnification and/or

contribution).  The Fifth Circuit outlines a few narrow instances where valid tort indemnity

claims still exist: (1) when there is an indemnitor and indemnitee relationship and consequent

duty owed; (2) when there is a significant difference in the indemnitor and indemnitee's degree

of conduct; and (3) when there is a difference in the character of the duties owed by the two to

the injured party. *Cities Serv. Co. v. Lee-Vac, Ltd.*, 761 F.2d 238, 240 (5th Cir. 1985). In

addition, in limited circumstances, the Court has recognized a tort indemnity claim based on the

warranty of

workmanlike performance ("WWLP") implied in maritime contracts under *Ryan Stevedoring*

*Co., Inc. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124 (1956). Kolmar Americas and Stolthaven

argue that HLL Barents has not set forth any allegations in its Verified Complaint to support a

finding that any of the above  exceptions apply.

　　　　First, Kolmar Americas argues that there is not an indemnitor and indemnitee

relationship and consequent duty owed.  As Kolmar Americas and Stolthaven note, this special

relationship, which gives rise to a consequential duty, is premised on the shipowner/stevedore

relationship. See *LCI Shipholdings, Inc. v. Muller Weingarten AG*,153 Fed. Appx. 929, 931 (5th

Cir. 2005) ("there is no special relationship (or consequential duty owed therefrom) between [ ] a

shipowner and carrier and [ ] freight forwarder…To the contrary, the damages claimed arise

from damage to [shipper's] cargo, and any duty breached [ ] that could have caused the damage

was a duty to [ ] the shipper", and no one else).  The "special relationship" HLL Barents had

with Kolmar Group and the "consequential duty owed therefrom", did not create a "special

relationship" between Stolthaven and HLL Barents or Kolmar Americas and HLL Barents,

contractual or otherwise.  Here, HLL Barents, as the vessel owner,  was not a party to the contract of carriage. Both parties assert that, given the arms length relationship between them and HLL Barents, there is no special relationship or consequential duty owed between the parties. Thus, they claim that this exception does not apply.

Second, Kolmar Americas and Stolthaven contend that HLL Barents may not rely on the second type of tort indemnity discussed in *Cities Service Co.* (i.e., when there is a significant difference in the indemnitor and indemnitee's degree of conduct). As explained in *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 236 (5th Cir. 1985), tort indemnity might exist in the following context: a vicariously liable or non-negligent tortfeasor is entitled to indemnity from a co-defendant guilty of actual fault.[4]  Here, Stolthaven asserts that HLL Barents is an ordinary defendant that owes damages only if it is found liable. Accordingly, Stolthaven contends that HLL Barents is adequately protected under the comparative negligence system, and may not maintain an action for *Marathon Pipe Line* indemnity against Stolthaven.

Kolmar Americas argues that there is neither a respondeat superior nor vicarious liability relationship between Kolmar Americas and HLL Barents. Kolmar Americas further notes, however, that this type of tort-indemnity was only available in the active/passive negligence context which, as the *Cities Service Co.* Court explained, was abandoned in the *Loose Offshore* decision. 761 F.2d at 241, n.1. Kolmar Americas argues that, under current Fifth Circuit law, the concepts of active and passive negligence have no place in a liability system that considers the facts of each case and assesses and apportions damages among joint tortfeasors according to the

---

[4]        In *Hardy*, the Fifth Circuit defined the term "non-negligent tortfeasor," stating that the term, as used in *Marathon Pipe Line*, applies only to those defendants on which the law imposes responsibility even though they committed no negligent acts. 949 F.2d at 833.

degree of responsibility of each party. *Loose*, 670 F.2d at 502; *Associated Marine Equip. v. Jin Yi Shipping Inc.*, No. 02-436, 2002 WL 1433886, at *3 (E.D. La. July 2, 2002). Stolthaven agrees, citing the *Jin Yi* case, and contends that the active/passive negligence scheme has been abandoned in favor of comparative fault.

The third type of tort indemnity identified by the *Cities Service Co.* Court occurs when there is a difference in the character of duty owed to an injured third party. In *Savoie v. Lafourche Boat Rentals, Inc.*, 627 F.2d 722, 723-24 (5th Cir. 1980), the Fifth Circuit held that a seaman's employer is required to make maintenance and cure payments to an injured seaman because the employer is bound to do so by a special duty imposed on the employer under maritime law. *Id.* When a seaman is injured by a third-party, the otherwise innocent employer is entitled to indemnification from the negligent third party. *Id.*

Kolmar Americas notes that this case does not involve a seaman/employer relationship or any other type of special duty imposed on Kolmar Americas under maritime law. Indeed, maintenance and cure is considered a quasi-contractual relationship that is implicit in the employment relationship between the seaman and her employer. *Calmar S.S. v. Taylor*, 303 U.S. 525, 527-28 (1938). However here, there is no contract between HLL Barents and Kolmar Americas. Stolthaven further notes that the Fifth Circuit has not extended this form of indemnity to a cargo case or beyond a claim involving no-fault liability. *LCI Shipholdings*, 153 Fed. Appx. at 932. Thus, both movants argue that "character of duty" indemnity is not applicable in this case.

Fourth, the movants assert that HLL Barents cannot raise an indemnification claim for an alleged breach of the WWLP. Kolmar Americas argues that to the extent that the *WWLP*, as

recognized in *Ryan Stevedoring Co*, still exists in the Fifth Circuit, it has been questioned, if not wholly displaced. *Rockwell Int'l Corp. v. M/V Incotrans Spirit,* 998 F.2d 316, 319 (5th Cir. 1993) ("We recognize that *Ryan* indemnification continues to exist, but are reluctant to expand it beyond the personal injury/seaworthiness context from which it arose."). Kolmar Americas and Stolthaven contend that because this case is outside the personal injury/seaworthiness context, there is no basis for the application of the theory of breach of the WWLP.

Last, Kolmar Americas argues that while admittedly not pled as such, HLL Barents' Verified Complaint is substantially similar to a Rule 14(c) claim for indemnity or contribution.[5] However, the general maritime law does not authorize an action for tort indemnity against a third-party defendant for property damage. *Hardy*, 949 F.2d at 834; *Fuesting v. Lafayette Parish Bayou Vermillion District*, No. 02-2511, 2007 WL 1728655, at *2 (W.D. La. June 13, 2007)("general maritime law does not authorize an action for tort indemnity against a third-party defendant.").

In opposition, HLL Barents argues that it has stated a viable claim for indemnity and/or contribution against both Kolmar Americas and Stolthaven. Under maritime law in the Fifth Circuit, HLL Barents claims that a defendant on which the law imposes responsibility, even though the defendant committed no negligent acts, is entitled to indemnity from those guilty of actual fault. HLL Barents asserts that the Carriage of Goods by Sea Act ("COGSA") applies by its own force to shipments to and from United States ports. Further, HLL Barents claims that it

---

[5]       HLL Barents admits that this is what it intended to do when it filed suit; however, Kolmar Group had not yet filed its civil action.  Thus, HLL Barents contends that if the Court determines dismissal is proper, it requests that the Court dismiss its claims without prejudice and allow HLL Barents to file its Rule 14(c) third-party demand against Kolmar Americas and Stolthaven in consolidated member case no. 10-4516, brought by Kolmar Group.

can be held responsible under the complex burden shifting scheme of COGSA even if it committed no negligent acts. *Steel Coils, Inc. v. M/V LAKE MARION*, 331 F.3d 422, 426 (5th Cir. 2003).  In other words, if Kolmar Group and its underwriters can show that the cargo was shipped under a clean bill of lading but discharged in a damaged condition, there is a presumption of liability on the part of the carrier, HLL Barents. The burden then falls to HLL Barents to show that it exercised due diligence to prevent the damage or that the damage was caused by a peril of the sea, by a latent defect in the cargo, or by some other exception under COGSA. Only if HLL Barents is able to meet this burden does the dispositive issue become whether HLL Barents was negligent. However, if HLL Barents is unable to meet its burden, COGSA imposes responsibility even though HLL Barents committed no negligent acts.  Thus, because HLL Barents claims that it can show at trial that the movants' negligence caused the contamination to the cargo, HLL Barents asserts that it will be entitled to indemnity from the movants under maritime law.

HLL Barents further argues that its claims against the movants extend well beyond simple indemnification and/or contribution. HLL Barents asserts that it has also made viable claims against the movants for negligence, lack of due care, breach of contract (both expressed and implied) and breach of implied warranty of workmanlike performance.  (Rec. Doc. 1, ¶¶ XIII-XV, XVII).  HLL Barents notes that none of these claims are either contested or addressed in the movants' motions.

## III.    LAW AND ANALYSIS

### A.    Legal Standard

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must

accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (quotation marks, citations, and footnote omitted). Plausible grounds "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the claim. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.*, (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

**B.    Analysis**

Here, this lawsuit is brought under this Court's admiralty and maritime jurisdiction. HLL Barents seeks indemnification and/or contribution from Kolmar Americas and Stolthaven should it be found liable to Kolmar Group by way of a judgment, arbitration award, or settlement.  (Rec. Doc. 1, ¶XVIII).  General maritime law, however, "no longer recognizes a plethora of tort indemnity theories." *Hardy*, 949 F.2d at 833. In fact, after *United States v. Reliable Transfer Co.* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), principles of comparative fault apply in both property damage and personal injury cases. 421 U.S. at 411; see also *Loose*, 670 F.2d at 500. Only a few narrow situations remain in which theories of tort indemnity may properly be

asserted, one example of which is where two parties have an express contractual indemnity agreement. Such an agreement is generally enforceable under maritime law. *Hardy*, 949 F.2d at 834, (citing *American Stevedores v. Porello*, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947)).

It is undisputed that the Verified Complaint does not identify any written indemnity agreement between HLL Barents and Kolmar Americas or between HLL Barents and Stolthaven. The only contract specifically identified in the Verified Complaint is the bill of lading. (Rec. Doc. 1, ¶ X). HLL Barents asserts that the bill of lading at issue, signed "on behalf of the master", was breached by Kolmar Americas when Kolmar Americas provided a cargo of Styrene Monomer that was contaminated with benzene for carriage on board the M/V MCT ALTAIR from Braithwaite, Louisiana to Antwerp, Belgium.  However, the Court agrees with Kolmar Americas that HLL Barents has neither alleged nor proven any rights under the bill of lading. While, under the ratification doctrine, the vessel may be liable, in rem, for cargo damage (see *Cactus Pipe & Supply Co.*, 756 F.2d at 1113), it does not necessarily follow that the vessel owner may have contractual rights or obligations under the bill of lading.  Further and perhaps more importantly, even *if* HLL Barents did sufficiently allege that it was in privity of contract with the movants by way of the bill of lading, any alleged breach of that contract would not require either of the movants to indemnify HLL Barents.  Here, it is undisputed that the bill of lading does not contain any provision which might be construed as an indemnity provision. Indeed, contractual indemnity only lies where the indemnity provision is express and unequivocal. See *Hardy*, 949 F.2d at 834.

While Kolmar Americas and Stolthaven address several theories of tort indemnity and argue that all are inapplicable, HLL Barents focuses, for the most part, on only one theory: that a

non-negligent tortfeasor may be entitled to indemnity from a co-debtor that is actually at fault.[6]

See *Marathon Pipe Line*, 761 F.2d at 236. In *Marathon*, the Fifth Circuit held that the user of a

defective product could be indemnified by the product's manufacturer when that product failed

because of a manufacturing defect and caused damages. HLL Barents alleges that it is a

non-negligent party on which the law imposes responsibility even though it "committed no

negligent acts." Specifically, HLL Barents claims that it can be held responsible under the

burden shifting scheme of COGSA, even if it committed no negligent acts.  *Steel Coils,* 331 F.3d

at 426.

However, this Court concludes that, according to *Hardy*, HLL Barents is not the kind of

defendant to whom *Marathon*'s indemnity principles apply. 949 F.2d at 833. As the movants

aver, the Court finds that HLL Barents is an ordinary party that owes Kolmar Group damages

only if the jury agrees that it was negligent. And as an ordinary party, HLL Barents is adequately

protected under the comparative negligence system. *Id.* Indeed, COGSA does not hold a carrier,

such as HLL Barents, strictly liable for damage without fault. See *Mitsui Sumitomo Ins. Co., Ltd.*

*v. Evergreen Marine Corp.,* 621 F.3d 215 (2nd Cir. 2010). Instead, a carrier is liable under

COGSA only upon a finding that it is negligent. *Id.*  While COGSA employs a non-traditional

burden of proof scheme, this fact is not relevant to this Court's analysis under *Hardy*.  Whether

the cargo interests must prove the carrier is negligent, or whether the carrier must prove it is free

from negligence, both situations require the carrier to be negligent for liability to attach. Thus,

because this Court must determine HLL Barents' negligence vel non, HLL Barents cannot avail

---

[6]       Because HLL Barents focuses on only one theory, the Court does not address the other theories
which Kolmar Americas and Stolthaven argue are irrelevant.  However, for the same reasons expressed by Kolmar
Americas and Stolthaven in Rec. Docs. 9 and 16, the Court agrees that the other theories of tort indemnity are
inapplicable to the matter at hand.

itself of the *Hardy* exception.  Taking HLL Barent's pleaded facts as true, it is not entitled to

indemnity and/or contribution from either Kolmar Americas or Stolthaven.

Indeed, general maritime law does not authorize an action for tort indemnity against a

third-party defendant for property/cargo damage. *Hardy*, 949 F.2d at 834; *Fuesting*, 2007 WL

1728655, at *2. Truly, if HLL Barents had desired to guard against potential cargo claims, it

could and should have protected itself with an express contract that provided for indemnification

or contribution. Because HLL Barents failed to do so, it must now face the consequences of that

decision. Thus, the movants' motions are granted as to the indemnity/contribution claims made

by HLL Barents.

As for HLL Barents' offer to file a Rule 14(c) third party demand against Kolmar

Americas and Stolthaven in consolidated member case no. 10-4516, the Court agrees with the

movants that a Rule 14(c) third party demand does not create a cause of action for a third party

plaintiff against a third party defendant, when no cause of action previously existed. Thus, the

filing of the cargo suit by Kolmar Group and the availability of filing a  Rule 14(c) third party

demand are immaterial to the sole issue of whether HLL Barents has stated a viable cause of

action against Kolmar Americas and Stolthaven herein. Thus, seemingly allowing HLL Barents

to do so would merely delay the result ultimately reached here: dismissal of HLL Barents'

indemnity/contribution claims.  Further, attempting to allow HLL Barents to file a Rule 14(c)

claim in the member case makes little sense as these two cases are not consolidated before the

undersigned.

Last, as HLL Barents notes, its claims against the movants extend beyond claims for

indemnification and/or contribution. HLL Barents alleges claims against the movants for

13

negligence, lack of due care, breach of contract (both expressed and implied) and breach of implied warranty of workmanlike performance.  (Rec. Doc. 1, ¶¶ XIII-XV, XVII).  It is true that the movants failed to address these claims in their motions to dismiss as separate causes of action.[7]  Thus, to the extent that these claims can be causes of action separate from an indemnity/contribution claim, the movants' motions are denied.

## IV.   CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that **Defendant Kolmar Americas, Inc.'s Motion to Dismiss (Rec. Doc. 9)** is **GRANTED IN PART, DENIED IN PART, and PARTLY DENIED AS MOOT**, for the reasons expressed herein.

**IT IS FURTHER ORDERED** that **Defendant Stolthaven New Orleans, L.L.C.'s Motion to Dismiss (Rec. Doc. 16)** is **GRANTED IN PART, DENIED IN PART, and PARTLY DENIED AS MOOT**, for the reasons expressed herein.

New Orleans, Louisiana, this 24th day of May, 2011.

**KURT D. ENGELHARDT**
**United States District Judge**

---

[7]      The WWLP was addressed in the initial motions in the context of it being a theory to support an indemnification claim. The Court agrees with the movants that HLL Barents cannot raise an *indemnification claim* for an alleged breach of the WWLP. For substantially the same reason stated by Kolmar Americas and Stolthaven, this Court finds that there is no basis for the application of the theory of breach of the WWLP to support *indemnification* claims because this case is outside the personal injury/seaworthiness context.  However, to the extent that this claim can be raised as a separate cause of action, it was not addressed in either of the initial motions. Even though it was addressed as a separate cause of action in Kolmar's Reply (See Rec. Doc. 37), the Court declines to address this argument because it was raised for the first time in a reply brief. Cf. *Green v. CCS Energy Services*, LLC, 2008 WL 5157505, n. 2 (E.D. La. Dec. 9, 2008 (*citing Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir.2008).